UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIAMOND JUNIOR,

                                  Plaintiff,

v.

ERIE COUNTY MEDICAL CENTER
CORPORATION,

                                  Defendant.
_____

**REPORT AND RECOMMENDATION**

18-CV-01014-LJV-JJM

        Plaintiff commenced this Title VII action *pro se,* alleging discrimination by defendant Erie County Medical Center Corporation ("ECMCC"), her former employer. Complaint [1].[1] Before the court is ECMCC's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [13], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [6]. Having reviewed the parties' submissions [13, 14, 17, 19] and heard oral argument on February 13, 2019 [22], I recommend that the motion be granted, without prejudice to plaintiff's right to file an Amended Complaint repleading certain of the claims.

**BACKGROUND**

        Plaintiff is an African American woman who began her employment with ECMCC in April 2013. Complaint [1], p. 2 of 15 (CM/ECF), ¶4. On October 18, 2017 (prior to commencing this action), she filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR") alleging discrimination arising from a September 2017 incident. Id., p. 13 of 15. In

---

[1]     Bracketed references are to the CM/ECF docket entries, and page references are to numbers reflected on the documents themselves rather than to CM/ECF pagination.

her NYSDHR Verified Complaint, plaintiff alleged that on September 10, 2017, while she was working as a Licensed Mental Health Counselor ("LMHC"), she and other staff members were attacked by "an aggressive patient". Id., ¶4. When asked whether she "wanted to swap out or was comfortable remaining on the unit", plaintiff replied that she "was comfortable staying" (id.), yet when plaintiff reported to work the next day, she allegedly was forced to "float to another unit" for her safety, notwithstanding the fact that a Caucasian employee was scheduled to "float" that day and that other Caucasian employees who had also been attacked by the patient were not required to float. Id., ¶5. Plaintiff alleged that she continued to "float" until the patient who attacked her was discharged (id., ¶6), and contended that she was subjected to disparate treatment because of her race and age. Id.

Although plaintiff's NYSDHR Verified Complaint was limited to the foregoing incidents, her Complaint in this action [1] alleges various other employment-related claims dating back to 2014. For example, it alleges that while working for ECMCC in June 2014, plaintiff twice applied for an LMHC position, but that Caucasians were hired before her, and that once she was hired as a LMHC in September 2015, she was the only African American LMHC on her unit and was "treated unfairly and targeted". Id., p. 5 of 15 (CM/ECF), ¶19.

In addition to the September 2017 incident referred to in the NYSDHR Verified Complaint, in this action plaintiff alleges being "targeted":

--   on December 29, 2016 by her unit manager, who accused her of talking on her cell Phone; by a counselor, who accused her of "talking 'too loud'; and by her team leader, who talked "badly" about her to others and gave her "dirty looks" and "roll[ed] her eyes" at her (id., p. 7 of 15 (CM/ECF));

--   on February 13, 2017 by her unit manager, who told her that she was the only one

permitted to be in the hallway, yet later "reprimanded" her for being in the hallway without another staff member (id.);

-- on February 14, 2017 by her unit manager, who lied about plaintiff refusing to do something for a patient (id.);

-- on February 15, 2017 by Human Resources, who tried to have a co-worker write a statement "against" plaintiff concerning an incident that occurred in the cafeteria several days earlier (id.);

-- on May 1, 2018 by a co-worker from another department, who attempted to "trigger[]" her by stating "'You're going to get into trouble' and 'I'm trying to help you'" and "interfering" with her job (id., p. 8 of 15 (CM/ECF));

-- on May 1, 2018 when her "work schedule was changed without [her] knowledge" (id., p. 3 of 15 (CM/ECF), ¶6); and

-- on May 3, 2018 by Human Resources, who tried to have a co-worker write a statement against "against" plaintiff concerning a disagreement between her and the co-worker (id., p. 8 of 15 (CM/ECF)).

Plaintiff alleges that because of "continually being targeted", she ended her employment with ECMCC on May 2, 2018 by giving her two-week notice. Id., pp. 3 (¶6) and 8 of 15 (CM/ECF). As a result of this conduct, plaintiff alleges race discrimination, hostile work environment, and retaliation claims in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e, *et seq*. ("Title VII"); and the New York State Human Rights Law, N.Y. Exec. Law §§290, *et seq*. ("NYSHRL").[2]

---

[2] Unlike plaintiff's NYSDHR Complaint, which alleged conduct attributable to both her race and age, she attributes the conduct alleged in this action solely to her race.

**DISCUSSION**

In moving to dismiss plaintiff's Complaint, ECMCC argues that "[m]ost of the[ ] claims . . . are untimely and [unexhausted]" and "[t]he balance . . . fail[ ] to state a claim upon which relief can be granted". ECMCC's Memorandum of Law [14], p. 2.

**A.     Title VII Claims**

**1.     Did Plaintiff Administratively Exhaust Her Claims?**

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Hardaway v. Hartford Public Works Department, 879 F.3d 486, 489 (2d Cir. 2018). Although "exhaustion is an essential element of Title VII's statutory scheme . . . . the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." Id. "Thus the Title VII exhaustion requirement is subject to equitable defenses." Id., 490.

For example, claims not asserted before the administrative agency "may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001). "A claim is reasonably related to the filed claim if the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015).

"'Reasonably related' claims are recognized in three situations: (1) the alleged discriminatory conduct would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) the claim is one of retaliation by an

employer against an employee for filing an EEOC charge; and (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Hunt v. Con Edison Co. N.Y.C., 2018 WL 3093970, *5 (E.D.N.Y. 2018) (*quoting* Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003)).

ECMCC argues that since "reasonably related claims must be 'based on *conduct subsequent to the EEOC charge*'", plaintiff's "claim that she was unfairly 'targeted' at various times between when she was hired as an LMHC in September 2015 through the date she filed her . . . charge on October 18, 2017 should be rejected". ECMCC's Memorandum of Law [14], pp. 6-8 (emphasis in original) (*quoting* Danials-Kirisits v. New York State Office of Court Administration, 2013 WL 1755663, *5 (W.D.N.Y. 2013) (a plaintiff has a "duty to include all relevant alleged discriminatory conduct when she filed the EEOC charge")). *See also* Bazile v. City of New York, 215 F. Supp. 2d 354, 360 (S.D.N.Y. 2002) ("[t]he 'reasonably related' doctrine does not cover a failure to include in the [administrative] charge allegations of acts of discrimination which the plaintiff must have been aware of, and which arose prior to the filing of the administrative complaint"); Guess v. University of Rochester, 2015 WL 4891377, *6 (W.D.N.Y. 2015); Dotson v. New York State Workers Compensation Board, 2018 WL 1183380, *8–9 (N.D.N.Y. 2018); Sternkopf v. White Plains Hospital, 2015 WL 5692183, *8 (S.D.N.Y. 2015); Serrano v. New York State Department of Environmental Conservation, 2017 WL 1194238, *3 (N.D.N.Y. 2017), aff'd, 714 Fed. App'x 90 (2d Cir. 2018) (Summary Order).

These cases rely on Butts v. City of New York Department of Housing Preservation and Development, 990 F.2d 1397, 1401 (2d Cir. 1993), which held that a district court may "hear Title VII claims that either are included in an EEOC charge or are based on conduct *subsequent* to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge", *citing* Stewart

v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir.1985) (emphasis added).

Although not mentioned by either party, other courts have taken a different view of Butts, recognizing that "the court in Stewart, to which Butts cites, merely stated that the reasonably related doctrine included acts subsequent to the filing of EEOC charges; the court did not state that the doctrine was only applicable to subsequent acts . . . . Furthermore, in Butts, the court actually found that conduct which occurred over a year prior to the filing of EEOC charges, but not specifically included therein, was reasonably related to the charges brought". Fusco v. Cohen, 1998 WL 167299, *1 (N.D.N.Y. 1998); Keck v. New York State Office of Alcoholism & Substance Abuse Services, 10 F. Supp. 2d 194, 197 (N.D.N.Y. 1998) ("despite the Second Circuit's use of the word 'subsequent,' [in Butts], it is established that conduct may be 'reasonably related' to the allegations of the charge even if it occurred prior to the filing of the charge").

Based on that interpretation of Butts, those courts have held that "[w]here . . . newly asserted claims are based on conduct that occurred prior to the filing of the EEOC charge, they are only 'reasonably related' to the allegations in the EEOC charge if the claim 'would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination'". Madray v. Long Island University, 2012 WL 2923500, *9 (E.D.N.Y. 2012) (*quoting* Butts, 990 F.2d at 1402); Herling v. New York City Department of Education, 2014 WL 1621966, *4 (E.D.N.Y. 2014). "This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003).

However, I need not resolve the conflict between these cases, since events occurring prior plaintiff's "floating" due to the September 2017 patient assault would not be expected to fall within the scope of the NYSDHR investigation of the Verified Complaint, which only identified that discrete incident. For example, in Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008), where the plaintiff's administrative "complaint recount[ed] nothing more than a single act", the Second Circuit concluded that "the plaintiff's allegation of a single incident of aggression by Sacco could [not] reasonably be expected to blossom into an investigation covering allegations of unrelated misconduct by Sacco dating back several years." Id. at 76-77. *See also* Pierre v. New York State Department of Correctional Services, 2009 WL 1583475, *8 (S.D.N.Y. 2009) ("[t]he complaints filed with the EEOC involve two discrete actions taken by Defendants . . . There is nothing to suggest that an EEOC investigation of . . . two isolated incidents would also encompass the later, unrelated, adverse administrative actions taken against Plaintiff"); Morris v. David Lerner Associates, 680 F. Supp. 2d 430, 437 (E.D.N.Y. 2010) ("[t]o give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference 'repeated conduct or the cumulative effect of individual acts' directed toward the plaintiff"). Therefore, I recommend that plaintiff's Title VII claim be dismissed to the extent it is based upon incidents occurring prior to September 2017, due to her failure to comply with the exhaustion requirement.

**2.      Is Plaintiff's Failure to Hire/Promote Claim Timely?**

ECMCC argues that plaintiff's failure to hire/promote claim is time-barred. ECMCC's Memorandum of Law [14], pp. 8-9. I agree. "[A] Title VII claim must be brought before the EEOC within 300 days of the alleged unlawful conduct in order to be considered timely." Feliz v. Metropolitan Transportation Authority, 2017 WL 5593517, *2 (S.D.N.Y. 2017),

reconsideration denied, 2018 WL 1721765 (S.D.N.Y. 2018). Plaintiff's failure to hire/promote claim arose no later than when she was hired as a LMHC in September 2015, which is more than 300 days prior to the October 18, 2017 Charge. Therefore, I recommend that this claim be dismissed as untimely.

### 3. Are Plaintiff's Claims Sufficiently Alleged?

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. "When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010).

#### a. Discrimination in Terms and Conditions of Employment

"Title VII prohibits an employer from engaging in intentional employment discrimination - known as 'disparate treatment - on the basis of race or national origin." Mimosa Pham v. Department of Children & Families, 2014 WL 3420470, *2 (D. Conn. 2014). Discrimination cases based on circumstantial evidence brought pursuant to Title VII are analyzed under the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-03 (1973). *See* United States v. City of New York, 717 F.3d 72, 83-84 (2d Cir. 2013) (discussing application of McDonnell Douglas framework to race discrimination claim). Under this burden-shifting framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Mathirampuzha, 548 F.3d at 78. "To survive a motion to dismiss, a Title VII plaintiff does not have to plead a full *prima facie* case . . . she need only give plausible support to a minimal inference of discriminatory motivation." Carris v. First Student, Inc., 682 Fed. Appx. 30, 32 (2d Cir. 2017) (Summary Order); Vega v. Hempstead Union Free School District, 801 F.3d 72, 84 (2d Cir. 2015).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000).

None of plaintiff's "targeting" claims suffice to establish adverse employment actions. In the absence of any allegation that floating resulted in a decrease in pay, constituted a career setback, subjected her to more dangerous working conditions, or required her to perform materially different job duties, the unscheduled floating assignments that occurred in September 2017 establish no more than a mere inconvenience or an alteration of her job responsibilities. *See* Wilson v. Ontario County Sheriff's Department, 2014 WL 3894493, *13 (W.D.N.Y. 2014)

(although the plaintiff alleged that her reassignment within the correctional facility placed her where "dangerous inmates" were housed, the reassignment did not constitute an adverse employment action where the plaintiff did not allege "that her job duties . . . were materially different . . . negatively impacted her opportunities for advancement, that her pay and/or benefits were changed as a result of the transfer, or that the terms and conditions of her employment were in any other way negatively impacted by this shift in her job responsibilities"). In fact, it appears that she was required to float for her own safety. *See* NYSDHR Determination and Order [1], p. 10 of 15 (CM/ECF) ("[t]he evidence indicates that complainant was required to float to another unit for her own safety, because a particular patient appeared to escalate her aggressive behavior toward complainant, more so than with other employees").

Plaintiff also alleges that a co-worker attempted to "trigger" her on May 1, 2018 resulting in the receipt of a "disciplinary letter". Complaint [1], p. 8 of 15 (CM/ECF). Generally, "negative performance evaluations, formal reprimands, and counseling memoranda are not adverse employment actions for purposes of a disparate treatment claim unless accompanied by negative repercussions such as reduction in pay or an injury to a plaintiff's ability to secure future employment." Babarinsa v. Kaleida Health, 58 F.Supp.3d 250, 260 (W.D.N.Y. 2014), aff'd, 622 Fed.Appx. 36 (2d Cir. 2015) (Summary Order). *See also* Chukwuka v. City of New York, 795 F.Supp.2d 256, 262 (S.D.N.Y. 2011), aff'd, 513 Fed.Appx. 34 (2d Cir. 2013) (Summary Order) ("reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation"). Based on the skeletal allegations of the Complaint, which fail to identify what discipline was imposed, I cannot conclude that this constituted an adverse employment action. Likewise, without more, plaintiff's allegation that on May 3, 2018 Human Resources unsuccessfully

attempted to have a co-worker write a statement "against" her regarding a disagreement between them (Complaint [1], p. 8 of 15 (CM/ECF)), is insufficient to establish an adverse employment action.

Plaintiff further alleges that her schedule was changed without her knowledge the night before she submitted her two-week notice. Complaint [1], p. 3 of 15 (CM/ECF), ¶6. Yet, as ECMCC argues, "[a] change in schedule, without more, is not an adverse employment action for purposes of a discrimination claim." Arroyo-Horne v. City of New York, 2018 WL 4259866, *11 (E.D.N.Y. 2018). Therefore, I recommend that this claim be dismissed.[3]

      **b.**    **Hostile Work Environment**

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). A hostile work environment claim is assessed based on the totality of the circumstances, and in making that assessment courts consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. To withstand a motion to dismiss, "a plaintiff need only plead facts sufficient to

---

[3] Even if plaintiff's allegations concerning the "targeting" incidents that occurred prior to September 2017 were properly exhausted, they similarly fail to constitute adverse employment actions. Much of that conduct resulted in either reprimands (*e.g.*, in December 2016 and February 2017 she was reprimanded for talking on her cell phone, for talking too loudly, and for being in the hallway without another staff member (Complaint [1], p 7 of 15 (CM/ECF)) or no discipline whatsoever (*e.g.*, in February 2017, her unit manager falsely stated that she failed to do something for a patient, causing plaintiff to "not receive morning report").

support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse". Id.

Characterizing the allegations of the Complaint as a handful of minor, isolated incidents, oftentimes separated by several months", ECMCC argues that the alleged conduct was neither sufficiently severe or pervasive, nor related to her race. ECMC's Memorandum of Law [14], pp. 14-15. I agree. While plaintiff generally alleges that each of the alleged incidents were "targeted", the only incident plaintiff appears to specifically attribute to her race is the September 2017 float incident. Complaint [1], p. 7 of 15 (CM/ECF) (I "was forced to float off of my unit, because my co-worker who is Caucasian did not want to float"). However, even if the other subsequent incidents could also be attributed to her race and be imputed to ECMCC, when viewed in the aggregate and as currently pled, they fail to sufficiently establish a quantity or quality of harassment to state a hostile work environment claim. See Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) ("isolated incidents of offensive conduct (unless extremely serious)" do not establish a hostile work environment). Therefore, I recommend that this claim be dismissed.

   c. **Constructive Discharge**

"Constructive discharge is a subset of 'hostile work environment'", Zick v. Waterfront Commission of New York Harbor, 2012 WL 4785703, *7 (S.D.N.Y. 2012), "arising out of particularly pronounced hostile work environments". Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions. . . . assessed objectively by reference to a reasonable person in the employee's position." Petrosino, 385 F.3d at 229-30. Since "[c]onditions that do not qualify as a hostile work environment under Title VII are,

by definition, not sufficiently intolerable to force an employee to quit", I recommend that this claim be dismissed. *See* Zick, 2012 WL 4785703, *7.

### d. Retaliation

Title VII prohibits employers from retaliating "against any . . . employee[ ] . . . because [s]he has opposed any practice made unlawful" by Title VII. 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115.

ECMCC argues that plaintiff has not sufficiently alleged the element of causation. ECMCC's Memorandum of Law [14], pp. 18-19. A plaintiff "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link". Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004). It must be established "by showing that the protected activity was closely followed by adverse action, or directly by showing evidence of retaliatory animus". Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, *9 (S.D.N.Y 2018). Although there is no bright line test, "courts uniformly hold that the temporal proximity must be very close" to establish a causal connection. Raymond v. City of New York, 317 F. Supp. 3d 746, 773–74 (S.D.N.Y. 2018).

Here, the only protected activity alleged in the Complaint is the filing of the Charge on October 8, 2017, and the only conduct that is alleged to have occurred after that protected activity are the incidents seven months later in May 2018. Complaint [1], pp. 7-8 of 15 (CM/ECF). Even if the alleged May 2018 conduct could be considered adverse employment actions,[4] the

---

[4] "For purposes of a retaliation claim, an adverse action need not be an action that affects the terms and conditions of employment, such as a hiring, firing, change in benefits, reassignment or reduction in

Complaint fails to establish a causal connection between those actions and plaintiff's protected activity.  Plaintiff makes no allegation of direct evidence of the retaliatory animus motivating the May 2018 incidents. Nor does she sufficiently allege any indirect evidence of a retaliatory animus. The seven month gap between the protected activity and the adverse action is too long to establish a causal connection by temporal proximity.  See Raymond, 317 F. Supp. 3d at 774 ("[c]ourts in this circuit often find[] a limit at two or three months and almost universally disapprove longer time periods").   It is also not evident from the allegations of the Complaint that all of the actors in the May 2018 incidents, most of whom were co-workers, were even aware of her protected activity, much less acting upon it.   Therefore, I recommend that this claim be denied.

**B.     NYSHRL Claims**

A court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction". 28 U.S.C. §1367(c)(3). Having recommended that plaintiff's federal claims be dismissed at this early stage, I likewise recommend that the court decline to exercise supplemental jurisdiction over plaintiff's NYSHRL claims, and that these claims be dismissed, without prejudice to plaintiff's right to reallege them in an Amended Complaint, and ECMCC's right to then seek their dismissal. See Johnson v. Levy, 812 F. Supp. 2d 167, 184–85 (E.D.N.Y. 2011); Cullen v. Verizon Communications, 2014 WL 6627494, *4 (W.D.N.Y. 2014). [5]

---

pay. . . . Rather, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Babarinsa, 58 F. Supp. 3d at 264.

[5]      Although the Title VII and NYSHRL pleading requirements generally overlap, there are some significant differences.  As recognized by ECMCC, there is a three year statute of limitations for failure to hire/promote claims. See ECMCC's Memorandum of Law [14], p. 9. See also Feliz v. Metropolitan Transportation Authority, 2017 WL 5593517, *2 (S.D.N.Y. 2017), reconsideration denied, 2018 WL

- 14 -

### C.     Should Plaintiff be Given an Opportunity to Amend the Complaint?

While "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated", Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991), "where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice". Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (an opportunity to amend is not required where "[t]he problem with [the] causes of action is substantive; better pleading will not cure it").

Given plaintiff's failure to exhaust her administrative remedies for the conduct alleged in the Compliant that arose prior to September 2017, I recommend that any Title VII claims arising from that conduct, including her untimely failure to hire/promote claim, be dismissed. However, since I cannot conclude at this point that plaintiff will be unable to properly plead a timely and administratively exhausted Title VII claim, I recommend that plaintiff be given an opportunity to replead any Title VII claims arising from conduct in and after September 2017.

### CONCLUSION

For these reasons, I recommend that ECMCC's motion to dismiss [13] be granted, without prejudice to plaintiff's right to file an Amended Complaint containing any Title VII claims arising from conduct in and after September 2017, as well as any NYSHRL claims.  Unless

---

1721765 (S.D.N.Y. 2018) (recognizing that the filing of a charge with the NYSDHR tolls the statute of limitations under the NYSHRL). Moreover, "[u]nlike Title VII, the NYSHRL does not require exhaustion of administrative remedies prior to commencing a claim under the NYSHRL." Reeve v. SEI/Aaron's, Inc., 2008 WL 905908, *3 (W.D.N.Y. 2008); Ross-Caleb v. City of Rochester, 512 Fed. App'x 17 (2d Cir. 2013) (Summary Order); Cao-Bossa v. Pulcher, 2018 WL 5839692, *6 n. 5 (N.D.N.Y. 2018).

otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by March 4, 2019. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 15, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge